## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARRIE BEETS, KENDRA CONWAY, ANGELICA SHATOKIN, VALERIE LA HAIE, MORGAN FLINT, LADEANNA JACKSON, MIKE XAVIER, LAKEA DIWA, GIOVANETT OMBLER, JESSICA PETE, ANDREA BROOKS, KIANNI DESILVA, JOHN WARD, ANGELA HAYES, ASAD S. FARHAD, ZAYAH GALICIA, LAURICE DAVIS, ARNALDO MORENO, VISHAL SHAH, ROBERT LOVE, JESUS MENDEZ, TRISTAN CAMPBELL, ANNE FRY, et al., individually an on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> T-MOBILE USA, INC., <br><br> Defendant. | CLASS ACTION <br><br> JURY TRIAL DEMANDED <br><br> Case No. |

## CLASS ACTION PETITION

Carrie Beets, Kendra Conway, Angelica Shatokin, Valerie La Haie, Morgan Flint, LaDeanna Jackson, Mike Xavier, Lakea Diwa, Giovanett Ombler, Jessica Pete, Andrea Brooks, Kianni Desilva, John Ward, Angela Hayes, Asad S. Farhad, Zayah Galicia, Laurice Davis, Arnaldo Moreno, Vishal Shah, Robert Love, Jesus Mendez, Tristan Campbell, and Anne Fry (individually and collectively as "Plaintiffs" and "Class Representatives") bring this action in their individual capacities and on behalf of a Class of similarly situated individuals seeking redress against T-Mobile USA ("T-Mobile" and "Defendant") for its deceptive practice of charging a contrived and misleading "Regulatory Programs and Telco Recovery Fee" to its customers.

## JURISDICTION

This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this case involves the application of federal law -- 47 U.S.C. §§ 201(b); 206 and 47 § C.F.R. § 64.2401 Federal "Truth-in-Billing" Rules. All named Plaintiffs are residents of the State of California. T-Mobile is headquartered in Bellevue, Washington and is registered as a foreign corporation licensed to do business in the State of California where the conduct giving rise to this action took place between Plaintiffs and T-Mobile.

Venue is proper under § 1391 (b)(2) as a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; Alternatively, venue is proper under 1391 (b)(3) as T-Mobile is a registered foreign corporation licensed to do business in the State of California and is therefore subject to the Court's personal jurisdiction with respect to this action.

## BACKGROUND

Plaintiffs are individuals who filed individual arbitrations in the American Arbitration Association in 2023. Even though arbitration of disputes is mandatory under T-Mobile's arbitration agreement[1], and purports to be the only means for any customer to seek redress, T-Mobile chose to default on its obligation to participate in and pay for each arbitration. Because of T-Mobile's choice to default under its own arbitration agreement, the AAA administratively closed the arbitrations on March 15, 2023[2]. As T-Mobile's refusal to arbitrate any of the claims filed

---

[1] The arbitration agreement in effect when the arbitration claims were filed and is attached as Exhibit A.

[2] The Parties attempted to mediate their dispute over the next several months with a failed mediation in March 2024. The letter is attached as Exhibit B.

constitutes a material breach of their arbitration agreement under California law[3], Plaintiffs bring this action in Court on behalf of themselves and others similarly situated.

## GENERAL ALLEGATIONS

T-Mobile claims that it does not charge hidden fees to its customers[4]. This claim is a lie. In 2004, T-Mobile began illegally charging a hidden "Regulatory Programs Fee." Then, in 2016, T-Mobile added a "Telco Recovery Fee." The combined "Regulatory Programs and Telco Recovery Fee" (hereinafter, the "RPTR Fee"), began at $2.71 per line/per month, and has since increased to $3.49 per line/per month: 28% over the last eight years. To conceal these illegal fees, T-Mobile includes the RPTR Fee in the section of their customer's monthly bill that bundles this fee with "Government Taxes and Fees" to disguise it as a required government charge, pass-through fee, or other regulatory-mandated fee. In reality, the RPTR Fee is a concoction designed to increase T-Mobile's revenue and pad its bottom line.

---

[3] *Williams v. W. Cost Hosps., Inc.*, 86 Cal. App. 5th 1054, 1066, 302 Cal. Rptr. 3d 803, 812 (2022), *review denied* (Mar. 29, 2023) (citing Cal. Civ. Proc. Code. § 1281.98) ("[A] drafting party who fails in its obligation to pay fees and costs required to initiate or continue the arbitration within 30 days after the due date is in material breach of the arbitration agreement, is in default of the arbitration, and waives its right to compel the employee or customer to proceed with that arbitration as a result of the material breach….Consequently…the employee or customer may *unilaterally* elect, among other alternatives, to withdraw the claim from arbitration and proceed in a court of appropriate jurisdiction.") (citations and quotations omitted) (emphasis in original).

[4] *See* https://vimeo.com/511719037 T-Mobile TVision with Rashida & Kidada Jones where Rashida Jones is on the phone with her cable service provider questioning all of the fees added to her bill and then the suggestion is when she switches providers to T-Mobile all of the billing hassle goes away. Interestingly, the disclosure at the bottom of the commercial states: " Qualifying T-Mobile postpaid wireless service & Internet connectivity required. Plus taxes; taxes approx.. 0-14% of bill," implying that the only additional fees one receives on their bill are taxes; *see also* https://adage.com/video/t-mobile-zach-braff-and-donald-faison-sing-duet-home-internet  Donald Faison and Zach Braff praise T-Mobile home internet because the bill doesn't contain unjustified fees; fees "without B.S."

T-Mobile's Subscriber Agreement makes no mention of the RPTR Fee and omits how much is charged, when it is charged, and that it is charged per line. The Agreement also provides that T-Mobile can unilaterally change the amount of its fees.

Two explanations of the fee provided are as follows:

- 1) [The] Regulatory Programs component helps defray costs for funding and complying with government mandates, programs and obligations, like E911 or local number portability, and 2) [the] Telco Recovery component helps defray costs and charges imposed on us by other carriers for delivery of calls from our customers to theirs and for certain network facilities (e.g., leases), operations, and services we obtain to provide you with service. Exhibit C.

- When Surcharges are assessed in connection with your Service, you can find the Surcharges detailed in either the "Taxes, Fees & Surcharges", "T-Mobile Fees and Charges" or the "Other Charges" sections of your bill or at www.myT-Mobile.com. See Exhibit A.

The first disclosure provides an unfair and deceptive explanation as to why the "RPTR Fee" is charged. Notably, the fee isn't strapped to any benchmark, it can change at will, and just happens to have an arbitrary cost of $3.49. The second disclosure is important because it explains that if a customer wants to know what surcharges are assessed, they can find that information once they've signed up for a monthly service plan and look at their bill to see what they are being charged. Neither the Agreement nor the disclosures incorporate, by reference or otherwise, a fee schedule or proper disclosure of the fees charged. Because the Agreement does not properly disclose the amount of the fee, that it is charged monthly, or that it is charged on a per-line basis, T-Mobile's practice of charging the $3.49 "RPTR Fee" is not included as part of its Agreement.

Further, by its own disclosure, customers can find out what fees they are being charged <u>only</u> by looking at their bill <u>after</u> they've signed up for an account.

T-Mobile should have accurately stated the true monthly prices for its post-paid wireless plans in its price representations and advertising. It failed to do so. T-Mobile's "RPTR Fee" scheme has enabled, and continues to enable, it to effectively increase its rates without having to publicly announce those higher rates. And consumers have been duped into paying these hidden charges for two decades.

## CLASS ALLEGATIONS

Plaintiffs bring this action individually and on behalf of a Class of similarly situated consumers seeking redress against T-Mobile for its practice of illegally charging the RPTR Fee. Plaintiffs seek to represent the following Class:

> **All current or former T-Mobile post-paid wireless plan account holders charged "Regulatory Programs and Telco Recovery Fees" within applicable statutes of limitation.**

Plaintiffs reserve the right to redefine and/or amend the Class prior to class certification.

Excluded from the Class are the attorneys representing the Parties to this action; the judges presiding over this action and their respective staff; and anyone who has filed an individual action, whether in a court or in arbitration, seeking relief for being charged "RPTR Fees."

This action may properly be maintained as a class action under Rule 23(a)(1)-(4) and Rule 23(b)(1) or (2) or (3) of the Federal Rules of Civil Procedure:

> **A. Numerosity (Fed. R. Civ. P. 23(a)(1)):** The Class for whose benefit this action is brought is so numerous that joinder of all Class members is impracticable. As of

5

December 31, 2023, T-Mobile maintained 29,797,000 post-paid phone subscribers[5] who are currently being charged RPTR Fees. While Plaintiffs do not presently know the exact number of Class members, on information and belief, the proposed Class consists of at least tens of millions of individuals who were charged T-Mobile's concocted RPTR Fee. The precise number of Class members can be readily determined by review of information maintained by T-Mobile.

B. **Commonality and Predominance (Fed. R. Civ. P. 23(a)(2)):** There are questions of law and fact that are common to the Class, and which predominate over any questions affecting only individual Class members. Those questions include, without limitation:

   i. Whether T-Mobile has committed an Unfair and Deceptive Trade Practices Act (or substantially similar statutory breach);

   ii. Whether and to what extent Plaintiffs and the other Class members are entitled to damages and other monetary relief; and

   iii. Whether Plaintiffs and the other Class members are entitled to injunctive relief.

C. **Typicality (Fed. R. Civ. P. 23(a)(3)):** Plaintiffs have substantially the same interest in this matter as all other proposed Class members and Plaintiffs' claims arise out of the same set of facts and circumstances as all other Class members. T-Mobile charged Plaintiffs and the other Class members "RPTR Fees" subjecting T-Mobile to liability for damages.

---

[5] Retrieved from https://www.sec.gov/ix?doc=/Archives/edgar/data/0001283699/000128369924000008/tmus-20231231.htm

**D. Adequacy (Fed. R. Civ. P. 23(a)(4)):** Plaintiffs are committed to prosecuting this action and have retained competent counsel experienced in litigation of this nature. Accordingly, Plaintiffs and Plaintiffs' counsel will fairly and adequately protect the interests of the other Class members. Plaintiffs' claims are coincident with, and not antagonistic to, those of the other Class members Plaintiffs seek to represent. Plaintiff has no disabling conflicts with Class members and will fully and adequately represent their interests.

**E. Superiority (Fed. R. Civ. P. 23(b)(3)):** Class action is the superior method for the fair and efficient adjudication of this controversy. Although the other Class members have claims against T-Mobile, the likelihood that individual Class Members will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation. (Indeed, T-Mobile likely counted on this in both charging the RPTR Fee and binding Plaintiffs to arbitration agreements designed to preclude them from organizing as a Class). Moreover, serial adjudication in numerous venues is not efficient, timely, or proper. Arbitral and/or Judicial resources would be unnecessarily depleted by the prosecution of tens of millions of individual claims. Joinder on an individual basis of millions of Plaintiffs in one suit would be impractical or impossible. Individualized rulings and judgments could result in inconsistent relief for similarly situated plaintiffs. And, if a class action is not permitted, Class members will continue to suffer losses and T-Mobile's misconduct will continue without proper remedy. Plaintiffs' counsel, experienced in class action litigation, foresee little difficulty in the management of this case as a class action.

F.  **Equitable Relief:** T-Mobile has acted or refuses to act on grounds generally applicable to the entire Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

## CLAIMS ALLEGED

### COUNT 1

**Violation of 47 U.S.C. §§ 201(b); 206 and 47 § C.F.R. § 64.2401**
**Federal "Truth-in-Billing" Rules**

1. All of the foregoing allegations are restated as if fully set forth herein.

2. Plaintiffs incorporate by reference as though fully set forth herein the allegations of the preceding paragraphs of this Complaint.

3. T-Mobile is subject to the "Truth-in-Billing" rules promulgated by the FCC and codified at 47 C.F.R. § 64.2401.

4. 47 C.F.R. § 64.2401(b) requires that "charges contained on phone bills must be accompanied by a brief, clear, non-misleading description of the service or services rendered."

5. The FCC has concluded that a carrier's provision of misleading or deceptive billing information is an unjust and unreasonable practice in violation of section 201(b) of the Communications Act.

6. T-Mobile has billed, charged and collected monies from Plaintiffs and the Class using a description that is unclear and misleading. By describing the RPTR Fee as a cost "for funding and complying with government mandates, programs and obligations, like E911 or local number portability" sought to create the impression that the RPTR Fee is somehow mandated or required by the government.

7. The FCC has determined that it is an unreasonable practice for carriers using discretionary line items to include any costs that do not accurately reflect the carrier's actual obligation to the specific governmental program that the line-item purports to recover.

8. The FCC has also found that it is unreasonable to suggest that a surcharge is mandated or required by the government.

9. By paying T-Mobile bills that included a RPTR Fees, Plaintiffs and the Class were injured by T-Mobile's violation of the FCC rule and § 201(b) of the Communications Act, in an amount to be determined at trial.

10. T-Mobile is liable to Plaintiffs and the Class under § 206 of the Communications Act for the full amount of damages sustained in consequence of T-Mobile's violation of § 201(b) of the Act, together with reasonable counsel or attorneys' fees.

## COUNT II

**Violation of California Consumers Legal Remedies Act § 1750 et seq.; (California Consumers Legal Remedies Act) and Substantially Similar State Unfair and Deceptive Trade Practices Acts**

1. All of the foregoing allegations are restated as if fully set forth herein. Plaintiffs and the Class purchased post-paid T-Mobile Wireless Plans.

2. Plaintiffs and the Class purchased their post-paid T-Mobile Wireless Plans for personal, family or household purposes.

3. As described above and incorporated herein, T-Mobile deceived its customers when it concocted disclosures in attempts to legitimize its practice of charging its customers "RPTR Fees" when, in fact, it was nothing more than a disguised revenue grab.

4. In all instances, T-Mobile either failed to disclose the existence of the "RPTR Fees" or intentionally provided misleading disclosures to deceive its customers into believing that the fee is a government fee, pass-through tax, or a regulatory-mandated fee.

5. In each instance, T-Mobile has violated one of the following applicable and substantially similar consumer state statutes[6] by acting unfairly and/or deceptively in its dealings with Plaintiffs and the Class.

- Alabama Deceptive Trade Practices Act, Ala. Code 1975, § 8–19–1, et seq.;
- Alaska Unfair Trade Practices and Consumer Protection Act, AS § 45.50.471, et seq.;
- Arizona Consumer Fraud Act, A.R.S § 44-1521, et seq.;
- Arkansas Deceptive Trade Practices Act, Ark.Code § 4-88-101, et seq.;
- California Consumers Legal Remedies Act § 1750 et seq.;
- Colorado Consumer Protection Act, C.R.S.A. §6-1-101, et seq.;
- Connecticut Unfair Trade Practices Act, C.G.S.A. § 42-110, et seq.;
- Delaware Consumer Fraud Act, 6 Del. C. § 2513, et seq.;
- D.C. Consumer Protection Procedures Act, DC Code § 28-3901, et seq.;
- Florida Deceptive and Unfair Trade Practices Act, FSA § 501.201, et seq.;
- Georgia Fair Business Practices Act, OCGA § 10-1-390, et seq.;
- Hawaii Unfair Competition Law, H.R.S. § 480-1, et seq.;
- Idaho Consumer Protection Act, I.C. § 48-601, et seq.;
- Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 501/1 et seq.;
- Indiana Deceptive Consumer Sales Act, IN ST § 24-5-0.5-2, et seq.;
- Iowa Private Right of Action for Consumer Frauds Act, Iowa Code Ann. § 714H.1, et seq.;
- Kansas Consumer Protection Act, K.S.A. § 50-623, et seq.;
- Kentucky Consumer Protection Act, KRS 367.110, et seq.;
- Louisiana Unfair Trade Practices and Consumer Protection Law, LSA-R.S. 51:1401, et seq.;
- Maine Unfair Trade Practices Act, 5 M.R.S.A. § 205-A, et seq.;
- Maryland Consumer Protection Act, MD Code, Commercial Law, § 13-301, et seq.;
- Massachusetts Regulation of Business Practices for Consumers Protection Act, M.G.L.A. 93A, et seq.;
- Michigan Consumer Protection Act, M.C.L.A. 445.901, et seq.;

---

[6] Each State has either adopted a Deceptive Trade Practices Act, an Unfair Trade Practices Act, or a Consumer Protection Act. Each State statute is so substantially similar that the only real distinction is the applicability to each Plaintiff based on their State of residency.

- Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68, et seq.;
- Mississippi Consumer Protection Act, Miss. Code Ann. § 75-24- 1, et seq.;
- Missouri Merchandising Practices Act, V.A.M.S. § 407, et seq.;
- Montana Unfair Trade Practices and Consumer Protection Act of 1973, Mont. Code Ann. § 30-14-101, et seq.;
- Nebraska Consumer Protection Act, Neb.Rev.St. §§ 59-1601, et seq.;
- Nevada Deceptive Trade Practices Act, N.R.S. 41.600, et seq.;
- New Hampshire Regulation of Business Practices for Consumer Protection, N.H.Rev.Stat. § 358-A:1, et seq.;
- New Jersey Consumer Fraud Act, N.J.S.A. 56:8, et seq.;
- New Mexico Unfair Practices Act, N.M.S.A. §§ 57-12-1, et seq.;
- New York Consumer Protection from Deceptive Acts and Practices, N.Y. GBL (McKinney) § 349, et seq.;
- North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen Stat. § 75-1.1, et seq.;
- North Dakota Consumer Fraud Act, N.D. Cent. Code Chapter 51-15, et seq.;
- Ohio Consumer Sales Practices Act, R.C. 1345.01, et seq.;
- Oklahoma Consumer Protection Act, 15 O.S.2001, §§ 751, et seq.;
- Oregon Unlawful Trade Practices Act, ORS 646.605, et seq.;
- Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, et seq.;
- Rhode Island Deceptive Trade Practices Act, G.L.1956 § 6-13.1- 5.2(B), et seq.;
- South Carolina Unfair Trade Practices Act, SC Code 1976, §§ 39-5-10, et seq.;
- South Dakota Deceptive Trade Practices and Consumer Protection Act, SDCL § 37-24-1, et seq.;
- Tennessee Consumer Protection Act, T.C.A. § 47-18-101, et seq.;
- Texas Deceptive Trade Practices-Consumer Protection Act, V.T.C.A., Bus. & C. § 17.41, et. seq.;
- Utah Consumer Sales Practices Act, UT ST § 13-11-1, et seq.;
- Vermont Consumer Fraud Act, 9 V.S.A. § 2451, et seq.;
- Virginia Consumer Protection Act of 1977, VA ST § 59.1-196, et seq;
- Washington Consumer Protection Act, RCWA 19.86.010, et seq.;
- West Virginia Consumer Credit And Protection Act, W.Va.Code § 46A-1-101, et seq.;
- Wisconsin Deceptive Trade Practices Act, WIS.STAT. § 100.18, et seq.;
- Wyoming Consumer Protection Act, WY ST § 40-12-101, et seq.

6. Plaintiffs and the Class have suffered ascertainable financial damages by the unfair and deceptive trade practices of T-Mobile.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs prays for a judgment in favor of Plaintiffs and the Class against Defendant as follows:

a.) Certify this action as a class action, appoint Plaintiffs as Class Representatives, and appoint the undersigned counsel to represent the Class;

b.) Award actual damages to Plaintiffs and the Class for the total amount of "RPTR Fees" paid by Plaintiffs and the Class;

c.) Award statutory damages to Plaintiffs and the Class as appropriate;

d.) Award pre-judgment and post-judgment interest to Plaintiffs and the Class;

e.) Issue injunctive relief to prevent T-Mobile from continuing to charge "RPTR Fees" or, alternatively, order T-Mobile to transparently disclose the actual charges customers will receive;

f.) Require T-Mobile to pay attorney's fees and costs;

g.) And for such other and further relief as this Court deems just and proper.

Respectfully Submitted,

/s/ Alex Winnick
Winnick Law, PC
Alex Winnick
CA Bar No. 239430
2450 Colorado Ave., Suite 100E
Santa Monica, CA 90404
aw@winlawpc.com
(424) 317-7411

/s/ Evan Murphy
Murphy Advocates LLC

Evan Murphy, *pro hac vice to be filed*
Co. Bar No. 35563
999 18th Street, Suite 3000
Denver, CO 80203
(314) 753-5212
evan@murphyadvocates.com

/s/ Maurice Mitts
Mitts Law LLC
Maurice Mitts, *pro hac vice to be filed*
PA Bar No. 50297
1822 Spruce Street
Philadelphia, PA 19103
(215) 866-0110
mmitts@mittslaw.com

Attorneys for Plaintiffs
and the Proposed Class